UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-102-RJC

| | |
|---|---|
| MARTAVIOUS SANTONIO CURRY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| REUBEN F. YOUNG, Secretary of ) | |
| N.C. Department of Public Safety, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment.[1] (Doc. No. 5).

## I. BACKGROUND

Petitioner is a state court prisoner who, on May 29, 2008, in Cleveland County Superior Court, the Honorable David S. Cayer presiding, was convicted after a jury trial of first-degree murder, discharging a firearm into occupied property, possession of a firearm by a felon, and robbery with a dangerous weapon in case numbers 06 CRS 57952 and 07 CRS 200-201. Petitioner was sentenced to consecutive terms of life without parole for the murder and robbery (which were consolidated for judgment), 77-102 months' imprisonment for discharging a weapon into occupied property, and 15-18 months' imprisonment for possession of a firearm by a felon. The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

---

[1] Reuben F. Young replaced Alvin W. Keller as the Secretary of the N.C. Department of Public Safety. Therefore, Young is the proper party in interest and will be substituted for Keller. See Rule 2 of the Rules Governing Section 2254 Proceedings and Fed. R. Civ. P. 25(d) (providing that when a public officer in an official capacity no longer serves in such a role, the "officer's successor is automatically substituted as a party.").

> The State's evidence tended to show that on 5 December 2006, defendant told his friend, Montrell Archie, that "he needed somebody to rob" because he had no money. Mr. Archie informed defendant he did not know of anyone, and defendant asked about Durrell Petty, an individual from whom Mr. Archie purchased his illegal drugs. Defendant and Mr. Archie decided they would commit a robbery that evening but changed their minds as they did not have a gun. Mr. Archie spent the night at his girlfriend's house, and defendant stayed at Mr. Archie's grandmother's house. On the morning of 6 December 2006, Mr. Archie drove to his grandmother's house and picked up defendant. Mr. Archie and defendant got an SKS rifle, and the two formulated a plan on "how to do the robbery[.]" Mr. Archie drove defendant to an area near Mr. Petty's house and dropped him off so that "it look[ed] like [Mr. Archie] didn't know what was going on[.]" Mr. Archie then drove to Mr. Petty's house and purchased some drugs from Mr. Petty. While at Mr. Petty's house, Mr. Archie saw defendant "come up on the car porch." Mr. Petty ran, and defendant fired a gun. Ms. McSwain, Mr. Petty's girlfriend, was also at the house with Mr. Archie and Mr. Petty. When Ms. McSwain heard the gunshot, she ran. At the time of the shooting, Ms. McSwain owned a pocketbook which contained money and her identification. During the shooting, Mr. Archie hid in the pantry and "continued hearing shots." Defendant "opened the pantry and pointed the gun" at Mr. Archie, asking where Mr. Petty was and telling Mr. Archie to search the house. Mr. Archie found Mr. Petty, who had already been shot, in the bedroom and "it didn't look like he was alive[.]" Mr. Archie then took a 9 millimeter handgun from Mr. Petty.
>
> Sergeant Dan Snellings of the Cleveland County Sheriff's Office reported to the crime scene and later went to a nearby unoccupied residence. At the vacant residence law enforcement personnel recovered an SKS rifle and a purse which contained Ms. McSwain's identification. Defendant was indicted for murder, discharging a firearm into occupied property, possession of a firearm by a convicted felon, and robbery with a dangerous weapon. Defendant was convicted by a jury on all charges. The trial court determined that defendant had a prior record level of two and sentenced him to life imprisonment without parole on his consolidated convictions for murder and robbery with a dangerous weapon. Defendant was also sentenced to 77 to 102 months for discharging a firearm into occupied property and 15 to 18 months for possession of a firearm by a convicted felon. Defendant appeals on numerous grounds.

State v. Curry, 692 S.E.2d 129, 133 (N.C. Ct. App. 2010).

On April 20, 2010, the North Carolina Court of Appeals arrested judgment on the robbery with a dangerous weapon charge, remanded the judgment for discharging a firearm into occupied property in order to correct a clerical error, and otherwise found no prejudicial error. Id. On

October 7, 2010, the North Carolina Supreme Court dismissed Petitioner's notice of appeal to that court, and denied discretionary review. State v. Curry, 702 S.E.2d 496 (N.C. 2010).

Petitioner was represented at trial by William A. Anthony, III, and on appeal by Daniel R. Pollitt, Assistant Appellate Defender. On October 24, 2011, Petitioner filed a pro se motion for appropriate relief ("MAR") in Cleveland County Superior Court. (Doc. Nos. 7-11; 7-12). On October 25, 2011, the Honorable Forrest Donald Bridges summarily denied the MAR. (Doc. No. 7-13). On April 23, 2012, Petitioner filed a pro se petition in the North Carolina Court of Appeals. (Doc. Nos. 7-14; 7-15). On April 27, 2012, the State filed a response. (Doc. No. 7-16). On April 30, 2012, the North Carolina Court of Appeals denied certiorari. (Doc. No. 7-17). Petitioner filed his pro se federal habeas application form in this Court on May 17, 2012.[2] (Doc. No. 1).

Petitioner brings the following eight grounds for relief in his Section 2254 petition: (1) the North Carolina Court of Appeals unconstitutionally upheld Petitioner's first-degree murder conviction on a theory not submitted to the jury; (2) the evidence was insufficient to sustain the robbery and murder convictions; (3) there was in impermissible literal, constructive and/or substantive amendment of the murder indictment; (4) the court or prosecutor erred by not providing notice of the intent to proceed on charges of first-degree murder; (5) Petitioner received ineffective assistance of counsel due to counsel's failure to object to the impermissible, literal, constructive amendment of the murder indictment; (6) the robbery with a dangerous weapon conviction was obtained and upheld under a prejudicial, duplicitous indictment; (7) the

---

[2] Respondent filed the pending summary judgment motion on June 15, 2012. On July 3, 2012, the Court issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to respond to the summary judgment motion. (Doc. No. 9).

3

trial court erroneously admitted inadmissible hearsay evidence concerning out-of-court statements; (8) and the trial court erroneously admitted inadmissible character evidence about Petitioner's prior incarceration, probation status, and drug use and sales.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ of habeas corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

4

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result][.]" Williams v. Taylor, 529 U.S. 362, 405 (2000); Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407; Lewis, 609 F.3d at 300-01 (stating that a state court unreasonably applies federal law when it "extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply[ ]") (citation and quotation marks omitted).

"[A]n unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams, 529 U.S. at 410. The former requires a "substantially higher threshold" to obtain relief than does the latter. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A habeas court, therefore, must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S. Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there

5

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

## III. DISCUSSION

### A. Ground One

In his first ground for relief, Petitioner contends that the North Carolina Court of Appeals unconstitutionally upheld Petitioner's first-degree murder conviction on a theory not submitted to the jury. To support this contention, Petitioner asserts that the North Carolina Court of Appeals overlooked the fact that an attempt to commit a crime, i.e., robbery with a dangerous weapon, and the crime itself are two separate offenses. Petitioner essentially contends that there was insufficient evidence to support the first-degree murder conviction under the felony murder rule. Petitioner states that the North Carolina Court of Appeals found sufficient evidence to support his first-degree murder conviction based on a theory of felony murder, wherein the underlying felony was robbery with a dangerous weapon, by finding the evidence sufficient to support an attempt to commit robbery with a dangerous weapon, which was not submitted to the jury.

The standard of review on federal habeas corpus of a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). Furthermore, any claim of insufficient evidence is necessarily a federal due process claim. See id. at 321. Petitioner raised the substance of his insufficiency of the evidence claim on direct appeal to the North Carolina Court of Appeals.

The Court of Appeals adjudicated and denied Petitioner's insufficient evidence claim as follows:

The standard of review for a trial court's denial of a motion to dismiss for insufficient evidence is well-settled:

Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense . . . .

A. Robbery with a Dangerous Weapon

Defendant argues that the "indictment in the robbery case alleged defendant took a 'handgun' and McSwain's 'pocketbook' from the presence, person, and residence of Petty and McSwain" but that "[a]t trial, there was not a scintilla of evidence defendant himself took a handgun and all the evidence showed any such taking was done by Archie." Defendant also argues that the evidence did not show how Ms. McSwain's pocketbook ended up with its "contents 'spilled out' under a[n] old 'door' in the carport of the nearby vacant house[.]" Essentially, defendant argues that there was no direct evidence that he actually took and carried away the pocketbook or gun from the person or presence of Ms. McSwain or Mr. Petty. However, direct evidence of defendant's taking the gun or pocketbook was not required. See State v. Salters, 137 N.C. App. 553, 557, 528 S.E.2d 386, 390 ("[J]urors may rely on circumstantial evidence to the same degree as they rely on direct evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Rather, the law requires only that the jury shall be fully satisfied of the truth of the charge." (citations and quotation marks omitted)), cert. denied, 352 N.C. 361, 544 S.E.2d 556 (2000). Even if we assume arguendo that defendant did not personally remove either the gun or the pocketbook from Mr. Petty's home or carry them away, the State presented substantial evidence that defendant made overt acts in an attempt to rob Mr. Petty by use of a firearm and that lives were endangered; indeed, Mr. Petty's life was lost.

"The elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." State v. Cole, 199 N.C. App. 151, __, 681 S.E.2d 423, 427 (2009) (emphasis added) (citation and quotation marks omitted). The crime of robbery with a dangerous weapon, as defined by N.C. GEN. STAT. § 14-87, includes within the definition of the crime an attempt to commit the crime; that is, the State may present evidence that defendant either completed the crime or that he attempted the crime, but either way the evidence would be sufficient that defendant may be found guilty of robbery with a dangerous weapon. See N.C. GEN. STAT. § 14-87 (2005).

Our Supreme Court has described the law regarding an attempt to commit robbery

7

with a dangerous weapon:

The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense. An attempted robbery with a dangerous weapon occurs when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result. . . .

Here, there was substantial evidence that defendant and Mr. Archie planned to rob Mr. Petty, obtained a weapon, formulated a plan to rob Mr. Petty, and went to Mr. Petty's house; defendant entered the house, which was occupied by both Ms. McSwain and Mr. Petty, and began shooting. Although the circumstantial evidence would suggest that defendant did actually take Ms. McSwain's pocketbook and remove it from the house, the crime of robbery with a dangerous weapon was complete even before any actual removal of the pocketbook. See N.C. GEN. STAT. § 14-87.

Defendant also argues that "there was insufficient evidence of taking from Petty's or McSwain's person or presence." However,

> [t]he word 'presence' . . . must be interpreted broadly and with due consideration to the main element of the crime-intimidation or force by the use or threatened use of firearms. 'Presence' here means a possession or control by a person so immediate that force or intimidation is essential to the taking of the property. And if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct, the taking is from the 'presence' of the victim.

State v. Tuck, 173 N.C. App. 61, 67, 618 S.E.2d 265, 270 (2005) (citations omitted).

The evidence here showed that both Ms. McSwain and Mr. Petty were present in the home when defendant arrived and began shooting. Ms. McSwain fled the residence, while Mr. Petty was shot and killed. Defendant had gone into the residence with a firearm with the stated intent of robbing Mr. Petty because he needed some money. He used "force or intimidation[,]" id., by shooting into the residence in furtherance of his plan to rob someone for money. As noted above, even if we assume that defendant did not actually remove the pocketbook or gun from the persons of the two victims, the crime of robbery with a dangerous weapon was complete before the removal occurred.

Defendant last argues as to robbery with a dangerous weapon that "there was insufficient evidence the pocketbook was 'carried away.' Thus, there was no evidence defendant transported the pocketbook from McSwain's person or presence to the nearby carport on December 6." However, as explained above, the crime of robbery with a dangerous weapon was complete upon defendant's attempt, see N.C. GEN. STAT. § 14-87, even if he did not "carry away" the pocketbook or gun from the home, although we note that the circumstantial evidence would certainly support an inference that defendant removed the pocketbook from the residence and dumped it nearby after the shooting. We conclude there was sufficient evidence of robbery with a dangerous weapon for the trial court to deny defendant's motion to dismiss as the State presented testimony regarding all of the essential elements of the crime of robbery with a dangerous weapon. See Cole, 681 S.E.2d at 427; Wilkerson, 675 S.E.2d at 680.

B. Murder

Defendant's last argument is that

> even if there [wa]s sufficient evidence of armed robbery, there is insufficient evidence of first-degree murder because there is insufficient evidence of the essential element defendant killed Petty with a deadly weapon. There is simply no evidence defendant was the perpetrator of Petty's shooting. Thus, there was no direct, eyewitness, or forensic evidence defendant shot Petty.

Defendant's argument assumes that "direct, eyewitness, or forensic evidence" is required and overlooks the numerous cases in which our courts have held that circumstantial evidence is adequate to support a conviction of murder . . . .

Here, the evidence "viewed in the light most favorable to the State," Wilkerson, 675 S.E.2d at 680, shows that defendant had the motive, the opportunity, and the capability to kill Mr. Petty. Defendant entered Mr. Petty's home, shooting repeatedly, seeking Mr. Petty in an attempt to rob him, and immediately after defendant fired the weapon, Mr. Archie found Mr. Petty, dead or dying from gunshot wounds. The State presented very substantial evidence of defendant's motive to rob Mr. Petty, the actual robbery, defendant's opportunity to kill Mr. Petty, and defendant's capability to kill Mr. Petty by shooting him with the weapon defendant procured for the very purpose of robbing Mr. Petty. It is entirely unnecessary that the State present eyewitness testimony that defendant shot Mr. Petty, as suggested by defendant's argument. See, e.g., Franklin, 393 S.E.2d at 786-89. The trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence. This argument is overruled.

State v. Curry, 692 S.E.2d 129, 141-46 (some citations omitted).

This Court finds that the North Carolina Court of Appeals' adjudication of Petitioner's insufficiency of the evidence claim did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, nor was the state court opinion based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. That is, in analyzing Petitioner's insufficient evidence claim, the state court did not unreasonably apply Jackson v. Virginia and its progeny regarding federal due process claims.

Petitioner also raised the substance of his insufficiency of the evidence contention in his MAR, which was summarily denied. Like the North Carolina Court of Appeals' adjudication of Petitioner's claim, the MAR Court's adjudication of Petitioner's claim was also neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it unreasonable determination of facts, in light of the evidence presented in the state court proceedings. In sum, Petitioner's First Ground for Relief is without merit.

B. Ground Two

In his second ground for relief, Petitioner contends that the evidence was insufficient to sustain the robbery and murder convictions. To support this contention, Petitioner asserts that he was convicted of felony murder on the basis that he took a handgun from another person, and the prosecutor never proved he took the gun from another. This contention is essentially the same argument as Petitioner's first ground for relief. Therefore, for all of the same reasons and authorities set forth above in response to Petitioner's first ground for relief, Ground Two is without merit.

C. Ground Three

In his third ground for relief, Petitioner contends that there was in impermissible literal,

constructive and/or substantive amendment of the murder indictment. To support this contention, Petitioner asserts that his murder indictment included second-degree murder, which requires "malice aforethought," although he was convicted of first-degree murder. Petitioner's assertion is without merit. First, although Petitioner raised an indictment claim on direct appeal, he did not fairly raise the same claim he now asserts. Instead, Petitioner raised this contention in his MAR.

The MAR Court denied Petitioner's third ground for relief based on grounds of procedural bar and, alternatively, on the merits. See N.C. GEN. STAT. §§ 15A-1419(a)(3) and (b) (2007) (claim shall be denied when defendant was in an adequate position to have raised it in a prior appeal but did not do so, absent cause and prejudice or a fundamental miscarriage of justice, i.e., actual innocence). The MAR Court's summary alternative adjudication on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented in the trial court. As Respondent notes, North Carolina's short-form murder indictment has repeatedly been upheld as constitutionally sufficient to support first-degree and second-degree murder. See Stroud v. Polk, 466 F.3d 291 (4th Cir. 2006) (short-form murder indictment sufficient to charge first-degree murder even though all specific essential elements not listed), cert. denied, 551 U.S. 1134 (2007); Allen v. Lee, 366 F.3d 319, 323-24 (4th Cir. 2004) (en banc) (same), cert. denied, 543 U.S. 906 (2004); Hartman v. Lee, 283 F.3d 190 (4th Cir. 2002) (same), cert. denied, 537 U.S. 1114 (2003). In sum, Petitioner's Third Ground for Relief is without merit.

D. Ground Four

In his fourth ground for relief, Petitioner contends that the trial court or prosecutor erred

by not providing notice of the intent to proceed on charges of first-degree murder. This contention is merely a re-phrasing of Petitioner's third ground for relief. Therefore, Ground Four will be denied for the same reasons that Petitioner's third ground is denied.

      E.      <u>Ground Five</u>

In his fifth ground for relief, Petitioner contends that he received ineffective assistance of counsel due to counsel's failure to object to the impermissible, literal, constructive amendment of the murder indictment. To support this contention, Petitioner asserts that counsel should have objected to the murder indictment and, if he had done so, he could not have been convicted of first-degree murder. This claim is without merit, as counsel could not have been ineffective for failing to raise a meritless challenge to the murder indictment. Furthermore, Petitioner did not raise this ground for relief on direct appeal, and the MAR Court denied the claim based on procedural grounds and alternatively on the merits. In sum, Petitioner's Fifth Ground for Relief is without merit.

      F.      <u>Ground Six</u>

In his sixth ground for relief, Petitioner contends that the robbery with a dangerous weapon conviction was obtained and upheld under a prejudicial, duplicitous indictment. To support this contention, Petitioner asserts that the robbery indictment alleged actual robbery, but the North Carolina Court of Appeals upheld the conviction in its opinion based on attempted robbery. Petitioner asserts that robbery and attempted robbery are not the same crime and the North Carolina Court of Appeals erred by holding that they were the same crime. This ground for relief is merely a rephrasing of Petitioner's first ground for relief and will be denied for the same reason Petitioner's first ground is being denied.

12

G. Ground Seven

In his seventh ground for relief, Petitioner contends that the trial court erroneously admitted inadmissible hearsay evidence concerning out-of-court statements. To support this contention, Petitioner asserts that Officer Love's testimony about McSwain's identification of Petitioner as the perpetrator in a photo line-up was inadmissible hearsay, went to a critical issue, and had a probable impact on the jury. First, this contention is procedurally barred because it was not fairly raised in federal constitutional terms on direct appeal but was raised in terms of state evidentiary law only. See (Doc. Nos. 7-5; 7-6: Petitioner's Appellate Brief). Furthermore, even if this claim were fairly raised in federal constitutional terms on direct appeal, it would also be procedurally barred based on the fact that Petitioner did not object at trial and the North Carolina Court of Appeals adjudicated and denied Petitioner's claim regarding Officer Love's testimony in terms of plain error.[3] See Daniels v. Lee, 316 F.3d 477, 487-88 (4th Cir. 2003) (availability of plain error review in state appellate court of claim which was procedurally defaulted because not raised at trial does not eliminate prior procedural default), cert. denied, 540 U.S. 851 (2003). In sum, Petitioner's Seventh Ground for Relief is without merit.

H. Ground Eight

In his eighth ground for relief, Petitioner contends that the trial court erroneously admitted inadmissible character evidence about Petitioner's prior incarceration, probation status, and drug use and selling. To support this contention, Petitioner asserts that the trial court erroneously admitted evidence about Petitioner's character from witnesses Montrell Archie,

---

[3] Petitioner's seventh ground for relief is also procedurally barred because he did not raise it in his notice of appeal and/or PDR to the Supreme Court of North Carolina. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (claims not raised in petition for discretionary review to state's highest court from intermediate state appellate court on direct review are non-exhausted and therefore procedurally barred from federal habeas review).

Lecia Pharr, John Kaiser, and Max Davis. Petitioner asserts that he never testified at trial and, therefore, character evidence should not have been admitted. Petitioner's eighth ground is without merit. First, as with his seventh ground for relief, Petitioner raised this claim on direct appeal in terms of state law grounds only. As Respondent notes, Petitioner's single reference to the Fourteenth Amendment on page 22 of his brief was insufficient to raise this as a federal constitutional claim on direct appeal. See also Chambers v. McCaughtry, 264 F.3d 732, 738 (7th Cir. 2001) ("A mere 'passing reference' to a constitutional issue certainly does not suffice."), cert. denied, 534 U.S. 1165 (2002). Furthermore, with respect to the each witness's testimony, Petitioner either did not object to admission of the testimony at trial and the Court of Appeals found no plain error on direct review and/or the Court of Appeals dismissed the claim because Petitioner failed to argue plain error in his appellate brief.[4] See State v. Curry, 692 S.E.2d 129 (N.C. Ct. App. 2010). Therefore, even if Petitioner had raised his eighth ground for relief as a federal constitutional claim, Petitioner's eighth ground for relief would be denied as procedurally barred. In sum, Petitioner's Eighth Ground for Relief is without merit.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 5), is **GRANTED** and the Section 2254 petition is dismissed with prejudice; and

2. Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. §

---

[4] Like his seventh ground for relief, Petitioner's eighth ground for relief is also procedurally barred because he did not raise it in his notice of appeal and/or PDR to the Supreme Court of North Carolina.

2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 13, 2013

Robert J. Conrad, Jr.
Chief United States District Judge